## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

TERENCE LEE                                                                   PLAINTIFF

v.                                    No. 4:11CV00526 JLH

LEXICON, INC.,
d/b/a CUSTOM METALS                                                          DEFENDANT

### OPINION AND ORDER

Terence Lee brings this action against his former employer, Lexicon, Inc., alleging

interference and retaliation under the Family and Medical Leave Act and race discrimination under

42 U.S.C. § 1981 and the Arkansas Civil Rights Act of 1993.  Lexicon has moved for summary

judgment on these claims.  For the following reasons, the Court grants summary judgment.

### I.

A court should enter summary judgment if the evidence demonstrates that there is no genuine

dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct.

2505, 2511, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial responsibility of

demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets this burden,

the nonmoving party must respond by coming forward with specific facts establishing a genuine

dispute for trial.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

In deciding a motion for summary judgment, a court views the evidence in the light most favorable

to the nonmoving party and draws all reasonable inferences in that party's favor.  *PHL Variable Ins.*

*Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008).  A genuine dispute exists only if

the evidence is sufficient to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477

U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make a showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## II.

The following facts are undisputed.  On June 13, 2005, Lexicon hired Lee, a black man, to work in welding for its Custom Metals division.[1]  While Lee had no prior experience as a welder, he did have a welding certificate obtained during a previous stint in prison.  Lee failed the initial vertical welder test given to him, however, so Lexicon hired him as a trainee until he was able to pass the test in June of 2006.  After passing the test, Lee worked as a helper to a welder fitter.  He was eventually promoted to the position of welder and then to the position of welder fitter.  In general, Lexicon classified its welders into A, B, and C categories, with A-welders being the most skilled, qualified, or experienced, and C-welders being the least.  Lee was classified as a C-welder.

On April 21, 2009, Lee fractured his pelvis at work when he was pinched between a moving load and a stationery object.  After the accident, Lee's physician temporarily barred him from anything more than light duty work, which meant that he could not do his job as a welder fitter. Lexicon subsequently offered Lee light duty work.  Lee was also eligible by that time to take FMLA leave.  Lee declined to take FMLA leave and agreed to the light duty work, which he performed for approximately two months.  During this two months, Lee started out working in the tool room.  After

---

[1] At the time, Lexicon had several divisions in Little Rock, including Custom Metals, Prospect Steel, and Schueck Steel.  *See* Document #33-7, at 3, 13 (deposition of Danna Gauntt, Lexicon's human resources director).  While most of Lee's interactions were with Custom, the Court will refer to the defendant as "Lexicon" throughout this opinion to avoid confusion.

a while, he was moved to the employee break room, where he was instructed to watch videos on workplace safety. In the past, Lexicon had assigned other light duty employees, including white employees, to do the same.[2] While he was on light duty, Lee was suspended for three days by shop foreman Beauford Smith.

Lee was released to full duty work by his physician on July 8, 2009. Nine days later, Lexicon laid off at least six employees from the Custom division, including Lee. At least four of these employees were white and two were black.[3] All of them were designated as non-rehirable.[4] On August 31, 2009, Lee filed a claim against Lexicon with the Equal Employment Opportunity Commission alleging retaliation, disability discrimination, and race discrimination. The EEOC

[2] In his response to Lexicon's statement of undisputed facts, Lee states that he does "not know about" the veracity of this sentence. *See* Document #35, at 3. Lee thus failed to controvert the statement as required under Local Rule 56.1(c), and it is deemed admitted.

[3] In their statements of undisputed facts, both parties agree that six persons were laid off in July of 2009. *See* Document #35, at 4-5. Furthermore, Lexicon attached a chart to its summary judgment motion repeating this number. *See* Document #23, at 46. Lee, however, attached a chart to his response indicating that seven employees were laid off at that time. *See* Document #33-7, at 28. And Lexicon's attorney echoed this latter number in deposition proceedings. *See* Document #23, at 25 ("I'll represent to you [Lee] that there were seven of you total."). Regardless, it appears to be the case that at least four white and two black employees were terminated in July of 2009.

[4] A fact issue exists concerning the extent of this non-rehirable designation. *Compare* Document #23, at 53 (EEOC: At Lexicon, non-rehirable designation applies to every division, not just the one from which the employee was terminated), *and* Document #33-5, at 41 (Lee: "But when I tried to apply at another division of the company . . . they're like, you're on the no rehire list."), *with* Document #33-7, at 12 ("[Gauntt:] Everyone in that first group was marked yes for rehire, [just] not at Custom. [Q:] Okay, so you're saying they could have been rehired over at Prospect? [Gauntt:] They could have. They could have, yes."). This dispute is irrelevant to the issues at hand, however, as the uncontroverted evidence indicates that all of the persons terminated in July of 2009 were treated equally in regard to the rehire designation. *See* Document #33-5, at 41 ("[Q:] And I'll represent to you that everybody who was laid off when you were was placed on the no rehire list. [Lee:] Yeah."); *id.* at 56 (Lee: "And to my understanding, the other [employees] that got laid off with me don't work there either.").

3

declined to pursue the action and issued Lee a right to sue letter on December 16, 2009.  On May 27,

2011, Lee filed suit in the Circuit Court of Pulaski County, Arkansas, alleging retaliation and

interference under the FMLA and race discrimination under section 1981 and ACRA.  One month

later, on June 28, Lexicon removed the action to this Court.  As noted above, Lexicon has now

moved for summary judgment on all of Lee's claims, and Lee has responded.

## III.

The FMLA entitles a qualified employee to leave from work if he is unable to perform his job

duties because of a serious health condition.  *See Sisk v. Picture People, Inc.*, 669 F.3d 896, 899 (8th

Cir. 2012) (citing *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011) and 29 U.S.C.

§ 2612(a)(1)(D)).  Two types of FMLA claims exist: interference and retaliation.  *Id.*  For either claim

a plaintiff must demonstrate that he exercised, attempted to exercise, or provided notice of a potential

attempt to exercise an FMLA right.  *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 934

(8th Cir. 2011) (interference claim requires "employee's exercise of or attempted exercise[] of any

right contained in the FMLA"); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)

("In order to benefit from the protections of the statute, an employee must provide his employer with

enough information to show that he may need FMLA leave."); *Johnson v. Dollar Gen.,* 880 F. Supp.

2d 967, 993 (N.D. Iowa 2012) ("There is no doubt, under Eighth Circuit law, that 'protected

conduct' that would support a retaliation claim . . . necessarily includes taking FMLA leave, when

eligible, and an attempt to take FMLA leave that ultimately would have been successful. . . . Eighth

Circuit law *also* supports my view that notice of a need for FMLA leave, made in good faith, is also

'protected conduct . . . .'" (emphasis in original)).  Taking a light duty assignment, however, does not

qualify as exercising, attempting to exercise, or providing notice of an attempt to exercise an FMLA

right.  *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 781 (7th Cir. 2013) ("There is no such thing as FMLA light duty." (citations and internal marks omitted)); *Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007) ("To the extent that 'light duty' is mentioned in the regulations, it is as a component of a workers' compensation program." (citing 29 C.F.R. §§ 825.220(d) and 825.702(d))); *Scott v. UPMC*, 435 F. App'x 104, 107 (3d Cir. 2011)  (employee's light duty request was insufficient, as a matter of law, to apprise employer of need for FMLA leave).

Here, it is undisputed that Lee expressly and voluntarily chose to work light duty rather than take the FMLA leave available to him.  *See* Document #23, at 10-11, 14, 18, 36 (various admissions by Lee in deposition); *id.* at 51-52 (signed letter expressing Lee's acceptance of light duty work).[5] Lee never exercised any right under the FMLA.  Lee cannot forego the use of FMLA leave in favor of light duty work and thereafter claim interference with and retaliation on the basis of a supposed exercise of FMLA rights.  *See Kleinser v. Bay Park Cmty. Hosp.*, 793 F. Supp. 2d 1039, 1045 (N.D. Ohio 2011) ("Plaintiff's assignment to, or removal from, a temporary light-duty position does not . . . trigger any FMLA-guaranteed right."); *Holpp v. Integrated Commc'ns Corp.*, No. Civ. 03-3383, 2005 WL 3479682, at *6 (D.N.J. Dec. 20, 2005) ("Holpp's averment that she was entitled to take FMLA leave on September 9, 2002, cannot overcome the fact she did not actually request leave at that time."), *aff'd*, 214 F. App'x 176 (3d Cir. 2007); *Haire v. U.S. Postal Serv.*, 121 F.3d 728, at *2 (Fed. Cir. 1997) ("Because Mr. Haire failed to invoke his rights under FMLA, the agency did not violate those rights by ordering him to return to [light duty] work.").

It is certainly true, as Lee asserts, that Lee's acceptance of his "light duty assignment [did]

_____

[5] When citing to depositions, the Court will cite to the page of the document in the record, not the page of the deposition itself.

not constitute a waiver of [his] prospective [FMLA] rights." 29 C.F.R. § 825.220(d).  But neither

did such an acceptance provide Lexicon with notice that Lee would likely take his FMLA leave in the

future.  Rather, the acceptance of light duty work tends to indicate the opposite—that Lee did not

plan on taking his FMLA leave.  To put this differently, section 825.220(d) signifies that an employee,

by agreeing to light duty work, does not waive his right to take FMLA leave, if so desired.  It does

*not* mean that an employee automatically exercises FMLA rights by taking light duty work.  As

*James*, *Hendricks*, *Scott*, and other opinions listed above show, that is simply not the case.  More is

required, and in this case, Lee has produced no evidence indicating that he notified Lexicon that the

FMLA was in play.

Lee argues that, while he was on light duty, his supervisors attempted to bully him into lying

to his physician and working his regular job, and that they retaliated against him for refusing to do

so by moving him from the tool room to the break room, disciplining him, and eventually terminating

him.  Even accepting this characterization as true, it still does not implicate the FMLA because, again,

Lee has failed to provide any evidence that he requested FMLA leave or put his supervisors on notice

that he would request it in the future.  Lee's deposition testimony that he would have preferred

FMLA leave to his regular work is inconsequential absent any evidence that he made his supervisors

aware that the FMLA was in the picture.  *See* Document #23, at 11 ("[Q:] So you never made any

effort whatsoever to take FMLA leave? . . .  [Lee:] No.").  Refusing to do regular work cannot be

an FMLA right where an employee has expressly declined FMLA leave and chosen light duty work

instead.  Lee's claims brought under the FMLA will be dismissed.

# IV.

To establish a claim of race discrimination under section 1981 and ACRA, Lee must either put forth admissible evidence that directly shows unlawful discrimination, or he must create an inference of such discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012) (analyzing section 1981 and ACRA race discrimination claims under this rubric); *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012) ("We analyze § 1981 claims and ACRA claims in the same manner." (citation and internal marks omitted)).   Lee has not come forth with any evidence of direct discrimination.   Thus, *McDonnell Douglas* applies, and Lee must first establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson*, 670 F.3d at 853-54 (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).   It is undisputed that Lee is a member of a protected class and that he suffered various adverse employment actions.

Lexicon argues that Lee did not meet its legitimate expectations because he had several documented instances of workplace disobedience and neglect.   For support, Lexicon first notes that Lee himself admitted that his actions in allowing himself to be injured were possible grounds for termination.   *See* Document #23, at 19 ("[Q: A]n employee putting himself in a position where he could be crushed between two pieces of metal would be grounds for termination? [Lee:] Possibly.").   Second, Lexicon has produced evidence indicating that Lee was issued a written warning for using

crutches on the shop floor.  *See id*. at 44 (warning given on May 15, 2009, for "Carelessness" and "Safety Rules or Unsafe Behavior"; states that Lee refused to sign); *id*. at 41 (Gauntt affidavit). Third, Lexicon observes that Lee was suspended for three days, which it contends was because he disregarded orders to stop using his cell phone.  *See id*. at 45 (suspension given on May 15, 2009, because he "[d]id not follow instructions"; signed by Lee); *id*. at 41 (Gauntt affidavit).  Finally, Lexicon points out that, after Lee returned to regular duty work, "it was reported that Lee was not wearing his seatbelt while using the fork lift in violation of safety regulations."  *Id.* at 41.  Lee disputes most of these events for various reasons.  *See, e.g., id*. at 34 (Lee: "They said I was observed walking—walking around the shop while I was on crutches, and received a written warning on May 15th, 2009.  I was never given anything by anyone about walking through the shop on crutches . . . [w]hich I supposedly refused to sign.").

Assuming, without deciding, that there is at least a fact issue as to whether Lee met Lexicon's legitimate expectations, Lee's discrimination claims still fail because Lee has not provided evidence sufficient to give rise to an inference of race discrimination.  To the contrary, Lee's own testimony strongly indicates an absence of race discrimination.  First, and most significantly, Lee admitted in his deposition that "I don't have any [evidence] at this time" that he was fired by Beauford Smith because he was black.  *Id*. at 13.  Second, Lee declined to testify that there was any racial discrimination in how he was paid.  *See id*. at 30 ("[Q:] So they were, in your view, very fair with you so far as your compensation? [Lee:] Yes, all the way up until I got injured. . . . [Q:] So you don't think there was any racial discrimination in your pay raises, correct? [Lee:] I cannot say there was or there wasn't."). Third, Lee admitted that, to the best of his knowledge, Lexicon has not discriminated against any other black employees.  *See id*. at 24, 27.  Fourth, Lee admitted that Lexicon hired and promoted

him, a black ex-convict, various times despite the fact that he failed his pre-hire welding test. *See id.* at 12-13 ("[Q:] If the company didn't want Terence Lee working there because Terence Lee is black, wouldn't that have been a good opportunity not to have hired Terence Lee right there, because Terence Lee didn't pass the welding test? [Lee:] Yeah."). Finally, in his response to Lexicon's statement of undisputed facts, Lee admitted that at least four of the persons terminated with him were white, and that all but nine out of nearly fifty Custom employees were laid off three months later. *See* Document #35, at 4-5.

In response, Lee argues that he has pointed to similarly situated persons who were not black who received differing treatment from Lexicon. The Eighth Circuit has recently clarified that, at the prima facie stage, a plaintiff is required to demonstrate that any proposed comparators are "similarly situated in all relevant respects." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1118-19 (8th Cir. 2012) (citation omitted). "[R]elevant respects" is further defined as "the conduct of the employees and any disparity in their discipline." *Id.* at 1119 (citing *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 856-59 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d 1031).

Most easily dismissed is Lee's testimony that he was reprimanded for safety issues—namely, for walking through the shop while on crutches—while at least one other white employee was not. *See* Document #23, at 10-12. When pressed, Lee was unable to identify the name of the employee, his qualifications, his time of service, and various other details. *Id.* Nor does his testimony indicate that he knows for certain that the other employee did not receive any discipline for his actions. *Id.* The details that Lee did identify are ambiguous and tend to indicate that this unnamed employee's conduct was not the same as Lee's conduct. *See id.* at 12 (Lee: "And like I said, I seen him from time to time come through the shop *not on crutches*, but on a cane." (emphasis added)). The Court is

9

unable to find that this employee received differing discipline for the same conduct as Lee.

Lee also argues that he, a C-welder, was terminated in July 2009 while some non-black C-welders were not, which is true. *See* Document #33-6, at 12-13 (naming Patrick Colwell, Manuel Martinez, and Juan Martinez as C-welders); Document #33-7, at 28-29 (noting that Colwell and the Martinezes are either white or Hispanic and were not laid off until October of 2009). It is not the whole truth, however. At least two white C-welders were terminated in July of 2009 with Lee, and at least two black C-welders were not terminated at that time. *See* Document #33-6, at 12, 15-16 (naming Andrew Heard, Matthew Singer, Rick Talik, and Herbert Wofford as C-welders); Document #33-7, at 28-29 (noting that Talik and Singer are white and were terminated with Lee, and that Heard and Wofford are black and were terminated later in 2009). In short, the evidence demonstrates that Lexicon laid off multiple white and black C-welders from Custom in July of 2009, and it declined to lay off multiple white and black C-welders at that same time. No inference of race discrimination can be drawn from these facts. Even ignoring this, however, Lee has still failed to produce evidence that the non-black C-welders who were not terminated actually engaged in similar conduct to himself. For example, no evidence shows that Colwell or the Martinezes ever engaged in any dangerous action at work that could have merited their termination, whereas Lee has admitted to doing so. They are therefore not similarly situated.

Finally, Lee testified that three white employees, Beauford Smith, Joe Green, and Justin Smith, went unpunished for specific conduct—cell phone use—that Lee engaged in and was punished for. *See* Document #23, at 19-20. Lee, however, admits that all three of these employees were actually supervisors, and thus his superiors. *Id.*; *see also id.* at 42 (Gauntt affidavit). Moreover, Gauntt stated in his affidavit that Custom supervisors were required to use their cell phones for work

purposes. *See id.* at 42.[6]  It is nearly axiomatic that a supervisor is not similarly situated to a non-supervisory employee.  *See Ryan v. Capital Contractors, Inc.,* 679 F.3d 772, 775, 778 (8th Cir. 2012) (even though supervisor worked alongside employee and only had limited authority over him, supervisor and employee were not similarly situated in part because they held different roles in the company); *Martin v. Mo.*, 175 F. App'x 781, 783 (8th Cir. 2006) ("Ms. Martin and the other employee were not similarly situated, however, as Ms. Martin had already been disciplined and suspended, and she was in a supervisory position."); *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 985 (7th Cir. 2001) ("[Weaver] was superior to and thus not similarly situated to the other managers and professional level staff . . . ."); *Grant v. Chicago Park Dist.*, 66 F.3d 328, at *3 (7th Cir. 1995) ("The three men were not similarly situated because Grant was their superior. . . ."). While all of these cases were decided at the pretext stage, under the particular circumstances here, given the breadth and significance of Lee's admissions listed above, there simply can be no reasonable inference that Lee was terminated or otherwise discriminated against because of his race.[7]  Thus, Lee has not made a prima facie case of race discrimination.

Even if the Court found that Lee had made a prima facie case of race discrimination, Lexicon has presented legitimate, non-discriminatory reasons for its actions, *see Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012) ("This burden is not onerous."), and Lee most certainly would not succeed under a pretext analysis based on the evidence here.  In short, a "reason cannot

---

[6] Lee disputed this in his deposition, although he admitted that he did not know whether Lexicon has any sort of policy on cell phone use or not.  *See id.* at 20.

[7] Adding to this conclusion is the fact that, despite his arguments to the contrary in his brief, Lee testified in deposition that he did not think that there was anybody who was similarly situated to him.  *See* Document #23, at 25-26 (Lee: "I don't think all our situations were similar.  I think maybe everybody had their own little thing.").

be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* at 955 (emphases in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).  At most, Lee has demonstrated that possible discrepancies exist in regard to why he was terminated and what rehire designation he was thereafter given.  *Compare* Document #33-6, at 7-8 (Beauford Smith: Lee was laid off at that time only because "[h]e was one of my least best welders"; he was designated non-rehirable because of safety concerns), *with* Document #33-7, at 11-12 (Gauntt: "[Lee] was laid off with six other employees because of a reduction in the amount of work we had. . . . [H]e was working on a job that—with those other employees, that ended, and that was the first group of people that we laid off.").  He has not shown, however, that the non-discriminatory reasons were false, nor has he shown that the true reason for his treatment was racial, since his comparators assuredly do not pass muster under the more "rigorous" standard applied about the pretext stage.  *See Ryan*, 679 F.3d at 775, 778; *Martin*, 175 F. App'x at 783; *O'Regan*, 246 F.3d at 985; *Grant*, 66 F.3d 328, at *3.

## CONCLUSION

For the foregoing reasons, Lexicon's motion for summary judgment is GRANTED.  Document #23.  Lee's claims are hereby DISMISSED with prejudice.

IT IS SO ORDERED this 9th day of April, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE